UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TREXEL, INC. and | ) | |
| MASSACHUSETTS INSTITUTE | ) | |
| OF TECHNOLOGY, | ) | C. A. No. 04CV10879 JLT |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DISPOZ-O PRODUCTS, INC. | ) | |
| | ) | |
| Defendant | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR TRANSFER OF VENUE PURSUANT TO 28 USC §1404(c)

### INTRODUCTION

Plaintiffs Trexel Inc. ("Trexel") and Massachusetts Institute of Technology ("MIT")

oppose the transfer of this case to the United States District Court for the District of South

Carolina. Defendant Dispoz-o Products, Inc. ("Dispoz-o") has failed to make the "strong

showing" legally required in order to overcome the deference traditionally accorded plaintiffs as

to selection of venue. The motion to transfer should be denied because Massachusetts has more

connection than South Carolina with the issues in this case. In particular:

- Both Plaintiffs are Massachusetts entities;

- The case involves Dispoz-o's infringement of patents on inventions made at MIT,

one of the principal scientific research universities in Massachusetts, and licensed to Trexel in

Massachusetts;

- More of the expected witnesses reside in Massachusetts than in South Carolina,

including the principal MIT inventor, patent prosecution counsel, key Trexel employees, and

other witnesses identified by Dispoz-o;

- This Court is more accessible to most out-of-state witnesses than the South Carolina court;

- Documents with respect to development of the patented invention at MIT and the development of Trexel's proprietary technology are located in Massachusetts;

- Most of the proprietary equipment which Trexel alleges Dispoz-o copied is located in Massachusetts;

- The principal patent infringement claims are governed by federal patent law, and this Court has substantial experience in patent infringement cases; and

- State law claims and counterclaims are divided about evenly between those governed by Massachusetts law and those by South Carolina law.

## BACKGROUND

The MIT Patents

As the result of inventions made in Massachusetts, MIT is the owner of numerous patents related to the manufacture of Microcellular Foam Products ("MFPs").[1]  On December 15, 1997, MIT entered into an Amended and Restated Patent License Agreement in Massachusetts with Trexel with respect to the technology covered by the MIT patents. (Verified Complaint ¶¶ 11-17).  Working in Massachusetts, Trexel utilized the MIT patents, along with its own know-how, to develop a proprietary process known as the "Mucell Process" to manufacture MFPs.  (Verified Complaint ¶ 19).

---

[1]  The four MIT patents at issue in this case are United States Patent Nos.:

- RE 37,932 ("Supermicrocellular Foamed Materials");
- 5,158,986 ("Microcellular Thermoplastic Foamed with Supercritical Fluid");
- 5,866,053 ("Method for Providing Continuous Processing of Microcellular and Supermicrocellular Foamed Materials"); and
- 6,051,174 ("Method for Providing Continuous Processing of Microcellular and Supermicrocellular Foamed Materials").

(Verified Complaint ¶¶ 13-16, Exhibits B1-B4).

The Trexel – Dispoz-o License Agreement

In September 2000 Trexel entered into an Extrusion License Agreement ("Dispoz-o Agreement") with Dispoz-o, a South Carolina company that manufactures plastic products such as school lunch trays.  Pursuant to the Dispoz-o License, Trexel licensed technology, including the MIT Patents, and Trexel patents and other know-how, to Dispoz-o and sold Dispoz-o various pieces of manufacturing equipment -- all for use in installing production lines to manufacture plastic school lunch trays.  (Verified Complaint ¶ 20).  Dispoz-o agreed to pay Trexel approximately $300,000 to $390,000 in license fees for each Mucell machine and to purchase proprietary equipment for approximately $125,000 to $150,000 per extrusion line.  (Affidavit of David P. Bernstein ("Bernstein Aff.") ¶ 3).

As part of the Dispoz-o License, Trexel sent a Massachusetts-based team of engineers to Dispoz-o's facility in South Carolina to assist with the installation of Trexel equipment for the tray manufacturing process.  Another Massachusetts company, Battenfield Gloucester Engineering, Inc. ("BGE") also provided engineering and design services to Dispoz-o with respect to the installation.  Dispoz-o succeeded in manufacturing plastic school lunch trays using the Mucell Process.  (Bernstein Aff. ¶ 3).  However, numerous disagreements arose between Trexel and Dispoz-o over the installation process.[2]  Dispoz-o complained about the length of time it took to complete the installation process and also alleged functionality problems.  Trexel denied any liability to Dispoz-o and contended that Dispoz-o was responsible for any delays and functionality problems.  (Verified Complaint ¶ 25).

---

[2]  In its memorandum and principal supporting affidavit, Dispoz-o has discussed those disagreements in detail. (Memorandum of Law in Support of Dispoz-o Products, Inc.'s Motion for Transfer of Venue Pursuant to 28 U.S.C. §1404(a) ("Dispoz-o Mem.") pp. 8-10); (Affidavit of David R. Foster ¶¶ 13-21).  Because the parties later settled these disputes, the plaintiffs are unclear what relevance they have to the present motion, and therefore have elected not to respond in detail.

<u>Dispoz-o's Improper Suit in South Carolina</u>

On or about February 25, 2003, Dispoz-o commenced suit against Trexel in the United States District Court for the District of South Carolina. Dispoz-o did so in violation of Section 9.9 of the Dispoz-o License, which required mediation in Boston for resolution of any disputes before litigation could be commenced. (Bernstein Aff. ¶ 5; Verified Complaint Exh. C, ¶ 23).

On March 21, 2002, nearly a month after filing the South Carolina complaint and without serving Trexel, Dispoz-o's counsel sent a courtesy copy of the complaint to Trexel's counsel. Trexel promptly advised Dispoz-o that its litigation was premature and subject to dismissal. Trexel also made a formal demand for mediation. (Bernstein Aff. ¶ 5, Exh. 1). Upon being confronted with the impropriety of its South Carolina suit and with the demand for mediation, Dispoz-o agreed that it would mediate the dispute in Boston. Dispoz-o never served the South Carolina complaint on Trexel. (Bernstein Aff. ¶ 5).[3]

<u>The Massachusetts Mediation and Settlement Agreement</u>

In May 2002 Trexel and Dispoz-o, along with counsel for both parties, participated in a mediation with a JAMS mediator in Boston. As a result of the mediation the parties entered into a Settlement Agreement which provided, among other things, that:

- Trexel would pay Dispoz-o $140,000 upon execution of the agreement;

- Dispoz-o would return specific proprietary equipment to Trexel;

- Trexel would pay Dispoz-o an additional $140,000 upon the return of the equipment;

---

[3] In its brief Dispoz-o repeatedly mentions the 2002 South Carolina litigation, as though somehow that litigation lends legitimacy to its motion to transfer venue. In fact, the South Carolina litigation never advanced beyond the mere filing of the complaint because the Dispoz-o Agreement mandated mediation prior to any litigation, and Dispoz-o filed the lawsuit prematurely in violation of the Dispoz-o Agreement.

- Upon receipt of the two $140,000 payments from Trexel, the Dispoz-o License was to terminate automatically, and Dispoz-o was to have no further rights "to use technology owned or licensed by Trexel";[4] and

- Trexel would execute a promissory note in the amount of $500,000 in favor of Dispoz-o, which note provided for monthly payments of $10,000 plus interest starting on July 1, 2004.

(Verified Complaint ¶ 26, Exhibit D).

Although the Settlement Agreement provides that it is governed by South Carolina law, the agreement does not include a forum selection clause. (Verified Complaint, Exhibit D).

Dispoz-o's Breach of the Settlement Agreement

Upon execution of the Settlement Agreement, Dispoz-o delayed in sending Trexel a list of the proprietary Trexel equipment at Dispoz-o and further delayed in returning the equipment to Trexel. Upon information and belief, Dispoz-o arranged for, and used, the delays in returning the equipment to copy Trexel's proprietary technology. The Trexel equipment included two primary screws, eight injectors, two hydro-pac pumps with two hydro-controllers and inner and outer die lips. Upon information and belief, Dispoz-o has continued to use the MIT Patents and proprietary Trexel know-how in violation of the Settlement Agreement to make plastic school trays virtually identical to those manufactured with Trexel's assistance prior to the Settlement Agreement. (Verified Complaint ¶¶ 28, 30; Bernstein Aff. ¶ 7).

---

[4] Curiously, in its Memorandum in support of its Motion to Transfer Venue, Dispoz-o makes no mention of this critical term in the Settlement Agreement, which provides the basis for Trexel's and MIT's claims against Dispoz-o in this action. (Dispoz-o Mem. pp. 10-11).

Trexel's Commencement of Suit in This Court

On May 4, 2004, Trexel and MIT brought this action for patent infringement under the federal patent laws, and Trexel alleged various additional state law claims arising out of Dispoz-o's breach of the Settlement Agreement and misappropriation of its trade secrets.

On July 2, 2004 Dispoz-o answered the complaint and filed a counterclaim. In its answer and counterclaim, Dispoz-o acknowledges that the Court has personal jurisdiction over the case and that venue in this case is proper. (Dispoz-o Answer ¶ 9; Counterclaim ¶¶ 5, 7). On the same day, however, Dispoz-o filed a motion to transfer venue to the District Court for the District of South Carolina.[5]

## ARGUMENT

### I.    DISPOZ-O HAS THE BURDEN OF SHOWING THAT THIS COURT IS A FORUM NON CONVIENIENS.

To succeed on its motion to transfer venue, Dispoz-o must demonstrate that considerations of convenience and judicial efficiency strongly favor litigating this case in South Carolina rather than Massachusetts. In considering such motions, there is a strong presumption in favor of the plaintiffs' choice of forum. *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 719, 720 (1st Cir. 1996) (upholding decision that the defendant in a wrongful death case was not able to overcome the strong presumption in favor of the plaintiff's choice of forum, where the plaintiff filed suit in Massachusetts and the incident alleged in the suit occurred in Hong Kong). Dispoz-o must bear the burden of proving both the availability of an adequate alternative forum

---

[5] In the Verified Complaint, Trexel indicated that it would deposit the monthly payments called for in the Settlement Agreement into an escrow account. (Verified Complaint ¶ 58). The parties have agreed in principle to establishment of such an escrow account and are working out the logistics. The parties also have stipulated to the preservation of evidence in lieu of a hearing on the Plaintiffs' motion for a preliminary injunction as to preservation of evidence. (Joint Stipulation Regarding The Preservation of Evidence dated June 10, 2004).

BOSTON 1946523v5

and that considerations of convenience and judicial efficiency strongly favor litigating the claim in South Carolina. *Id.* at 719.

A party seeking a transfer of venue must show that the plaintiff's choice of forum is substantially more inconvenient than the alternative proposed by the movant. *Kleinerman v. Luxtron Corp.*, 107 F. Supp. 2d 122, 125 (D. Mass. 2000), *citing Anderson v. Century Products Co.,* 943 F. Supp. 137, 148 (D.N.H. 1996). Courts have developed a number of factors to measure the convenience or inconvenience of litigating in a particular court, including: (1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the convenience of witnesses and location of documents, (4) any connection between the forum and the issues, (5) the law to be applied and (6) the state or public interest at stake. *Id.*, *citing SW Indus., Inc. v. Aetna Cas. & Sur. Co.*, 653 F. Supp 631, 637-39.

Given that there is a presumption in favor of the plaintiff's choice of forum, motions to transfer are not to be liberally granted. *See Nowak,* 94 F.3d at 719. The plaintiff's choice of venue will be disturbed only rarely. *Id.* The First Circuit has emphasized that a transfer of venue is generally used only to avoid "serious unfairness." *Nowak*, 94 F.2d at 719; *Howe v. Goldcorp Investments, Ltd.*, 946 F.2d 944, 947 (1st Cir. 1991).

Absent compelling reasons, Trexel and MIT are entitled to litigate this patent infringement suit in Massachusetts, where they are located, the inventions were made, many of the witnesses reside and many of the documents are maintained. Dispoz-o has not met the heavy burden it must meet in order to transfer the case to South Carolina.

**II.    THE PLAINTIFFS' CHOICE OF FORUM IS ENTITLED TO DEFERENCE BECAUSE THEY ARE LOCATED IN MASSACHUSETTS.**

   A.    The Presumption In Favor Of A Home Forum Is Strong.

The presumption in favor of a plaintiff's choice of venue is particularly strong when, as in this case, the jurisdiction the MIT and Trexel chose is their home forum. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255-56 (1981) (stating that: "When the home forum has been chosen, it is reasonable to assume that this choice is convenient."); *see also Novak*, 94 F.3d at 720-21 (upholding the district court's denial of the defendant's motion to transfer venue where the plaintiff filed suit in Massachusetts, his home forum, and the incident spurring the suit occurred in Hong Kong); *Kleinerman*, 107 F. Supp. 2d at 125, 126 (denying defendant's motion to transfer suit where patentee filed infringement suit in its home state); *Coady v. Ashcroft & Gerel*, 996 F. Supp. 95, 100 (D. Mass. 1998) (stating: "There is a strong presumption in favor of the plaintiff's choice of forum."), *rev'd on other grounds*, *Coady v. Ashcroft & Gerel*, 2000 WL 1072386, at *9 (1st Cir. 2000); *Anderson v. Century Products Co.*, 943 F. Supp. 137, 148, 149 (D.N.H. 1996) (denying defendant's motion to transfer the case where the plaintiff, an inventor, filed a misappropriation claim in New Hampshire, which was his home forum).

The First Circuit, relying on United States Supreme Court precedent, has stated that the plaintiff should not be deprived of the presumed advantages in its home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to the plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative or legal problems. *Nowak,* 94 F.3d at 720, *citing Koster v. (American) Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 524 (1947). In *Koster*, the Court stated, "In any balancing of conveniences, a real showing of convenience by

BOSTON 1946523v5

a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown." 330 U.S. at 524.

        B.      <u>Dispoz-o's Reliance On *Saint-Gobain* Is Misplaced.</u>

        Dispoz-o argues that "in a patent infringement case, where the central facts of a lawsuit occur outside the forum state, plaintiffs' choice of venue is accorded less deference," citing *Saint-Gobain Calmar, Inc. v. National Products Corp.*, 239 F. Supp. 2d 655 (E.D. Pa. 2002). Dispoz-o's argument is unavailing.

        First, *Saint-Gobain* involved a plaintiff patent owner which sued for infringement *outside* of its home forum. *See* 230 F. Supp. 2d at 659. In *Saint-Gobain,* the court stated that a plaintiff's choice of forum is "entitled to less weight where the plaintiff chooses a forum which is *neither* his home *nor* the situs of the occurrence on which the suit is based." *Id.* (emphasis added), *citing National Paintball Supply v. Cosio*, 996 F. Supp. 459, 462 (E.D. Pa. 1998). In this case, unlike in *Saint-Gobain*, Trexel and MIT filed their complaint in their home forum. *See id.*

        Furthermore, many of the central facts in this case did occur in Massachusetts. The patents in question arise out of inventions made at MIT in Cambridge and embodied in manufacturing processes developed at Trexel's facility in Woburn. The mediation and negotiation of the Settlement Agreement at issue in the case both took place in Massachusetts. After the execution of the Settlement Agreement, Dispoz-o deliberately delayed in returning Proprietary Trexel equipment to Trexel in Massachusetts – to facilitate Dispoz-o's copying of the Trexel technology. MIT and Trexel have suffered injury in Massachusetts as a result of Dispoz-o's misconduct. This case is very unlike *Saint-Gobain*, where the plaintiff filed suit in Pennsylvania even though none of the relevant incidents occurred there and no relevant documents were stored there. *See* 230 F. Supp. 2d at 660. Rather, the only connections with the forum state in *Saint-Gobain* were the presence of the plaintiff's local counsel and the sale of

allegedly infringing products there by third-party distributors that were not parties to the action.[6]
*Id.*

> C.    This Action Is Not A Pre-emptive Effort To Avoid A Suit By Dispoz-o In
>       South Carolina.

Dispoz-o argues – vainly – that the Plaintiffs' choice of venue is "overcome" because

they filed this suit in anticipation of a filing by Dispoz-o in South Carolina.  (Dispoz-o Mem.

pp. 19-20).  Dispoz-o further argues that the filing of this case was to "avoid being sued for non-

payment [under the promissory note] in South Carolina." (Dispoz-o Mem. p. 20).  Dispoz-o's

argument ignores several critical facts.

First, the Plaintiffs' suit for patent infringement is an affirmative case to obtain damages

from Dispoz-o, not a pre-emptive suit to avoid Trexel's payment obligations on a promissory

note.  Trexel's patent infringement damages (and other state law count damages) are quite likely

to exceed Trexel's payment obligations under the Settlement Agreement.  MIT has no stake

whatsoever in Trexel's payment obligations under the Settlement Agreement and is entitled in its

own right to litigate its patent infringement claims in its home forum.  (Affidavit of Karin Rivard

("Rivard Aff.") ¶¶ 7-8).

Furthermore, where there are two identical actions pending concurrently in two federal

courts, the first-filed action is generally preferred, even if it is a pre-emptive request for a

declaratory judgment.  *See Reebok International, Ltd. v. Dunkadelic, Inc*., 2004 U.S. Dist.

---

[6]  The instant case is distinguishable from a number of cases Dispoz-o cited in support of the proposition that the most appropriate forum in a patent infringement action is where the genesis of the infringing activity occurs -- because in those cases, there was virtually no connection between the facts and the plaintiff's chosen forum.  *See Anadigics, Inc. v. Raytheon Co*., 903 F. Supp. 615, 617 (S.D.N.Y. 1995) (transferring infringement action when there were *no* witnesses, documents or any other significant aspect of the suit found in the Southern District of New York); *see also Boreal Laser, Inc. v. Coherent, Inc*., 1992 U.S. Dist. LEXIS 276 *5—6  (S.D.N.Y. 1992) (transferring patent infringement case where the only connection to the plaintiff's choice of forum was that an allegedly infringing product was sold there and a subsidiary was based there); *Volk Corp. v. Art-Pak Clip Art Serv.*, 432 F. Supp. 1179, 1182 (S.D.N.Y. 1977) (transferring case when the *only* relationship between New York and the facts was that some of the alleged infringing items were mailed into New York).

LEXIS 3167 (D. Mass. 2004) (refusing to transfer venue in trademark infringement declaratory judgment case); *see also The Holmes Group Inc. v. Hamilton Beach/Proctor Silex Inc.*, 249 F. Supp. 2d 12, 16-17 (D. Mass. 2002) (refusing to transfer a patent infringement case where the plaintiff did not mislead the defendant into foregoing litigation or sprint to the courthouse in order to secure the best forum); *Veryfine Products, Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16, 24 (D. Mass. 2000) (refusing to transfer case where there was no reason to believe that the plaintiff reacted to notice of imminent filing by literally running to the courthouse the same day). *But see Davox Corp. v. Digital Sys. Int'l, Inc.*, 846 F. Supp. 144, 148 (D. Mass. 1993) (refusing to hear a first-filed declaratory action where the plaintiff brought the claim after misrepresenting its intent to negotiate with the defendant).  In this case, Dispoz-o has not alleged that there were settlement discussions underway when Trexel filed the instant suit or that Trexel represented that it would not file suit. Nor has Dispoz-o commenced a competing lawsuit in South Carolina. (Dispoz-o's 2002 suit in South Carolina should have no bearing on this motion because Dispoz-o filed the suit improperly and dismissed it before ever even serving it on Trexel).[7]

Thus, in the absence of any deliberate misconduct on the part of the plaintiffs in the selection of this venue, their choice of home forum should remain undisturbed.

## III.   THIS COURT IS MORE CONVENIENT FOR THE PARTIES.  MANY OF THE EXPECTED WITNESSES AND MUCH OF THE EVIDENCE ARE LOCATED IN MASSACHUSETTS.

### A.    Two Of The Three Parties Are Located In Massachusetts.

Here not just one, but both of the Plaintiffs, are located in Massachusetts.  Both Trexel and MIT have indicated that this Court is more convenient for them than the District of South Carolina (Bernstein Aff. ¶ 9;  Rivard Aff. ¶ 8).

---

[7] *See* note 3, *supra*.

B.    <u>Over A Dozen Likely Witnesses Reside In Massachusetts.</u>

1.    <u>Dispoz-o Has Acknowledged That A Substantial Number Of The Prospective Witnesses Reside In Massachusetts.</u>

In addition to the fact that two of the three parties in the case are located in Massachusetts (as well as BGE, non-party company deemed by Dispoz-o to be pivotal to the case), more of the expected witnesses reside in Massachusetts.  In its brief, Dispoz-o acknowledges that at least seven witnesses reside in Massachusetts.  They include the following Trexel employees or former employees:

- President David Bernstein, who negotiated the Dispoz-o License and the Settlement Agreement;

- Jere Anderson, an engineer who had major responsibility for Trexel's equipment designs and process development; and

- Kent Blizzard, a former Trexel engineer who also had major responsibility for Trexel's process development.

(Dispoz-o Mem. pp. 12-13; Bernstein Aff. ¶ 8).

Dispoz-o also points out that four potential witnesses from BGE are believed to be residents of Massachusetts.  They include:

- Vice President of Sales and Marketing Robert Weeks;

- Product Manager Doug Comeau;

- Vice President of Engineering Ken Warnoch; and

- Engineer Ken Sweet.

(Dispoz-o Mem. p. 13).

2.    <u>There Are Other Significant Potential Witnesses Who Reside In Massachusetts.</u>

a.    <u>The Principal Inventor Lives In Massachusetts.</u>

The principal inventor of the four patents at issue is Dr. Nam P. Suh of Sudbury, Massachusetts. Dr. Suh is the Ralph E. and Eloise Cross Professor in the Department of Mechanical Engineering at MIT, and a director of Trexel. After inventing the processes embodied in the four relevant patents, he also worked to develop Trexel's Mucell Process. As a result of these various roles, Dr. Suh is expected to be a witness.

b.    <u>MIT's Patent Prosecution Counsel Reside In Massachusetts.</u>

MIT and Trexel anticipate that the patent prosecution counsel may be witnesses in the case. The attorneys and/or firms that prosecuted the MIT patents on the university's behalf are in Massachusetts. They are:

- Robert O'Connell of Dike, Bronstein, Roberts & Cushman (Boston, Massachusetts);

- George A. Neuman of Edwards & Angell (Boston, Massachusetts); and

- Ernest Linck of Banner & Witcoff, Ltd. (Boston, Massachusetts).

(Rivard Aff. ¶ 5).

c.    <u>Another Potential Trexel Witness Resides In Massachusetts.</u>

In addition to the Trexel witnesses acknowledged by Dispoz-o to be Massachusetts's residents, there is at least one other significant potential Trexel witness who lives in Massachusetts. He is:

- Alex D'Arbeloff, Chairman of the Board of Trexel and a former Chairman of the MIT Corporation, who helped found Trexel, oversaw the development of the Mucell Process,

and also helped the negotiate the Settlement Agreement at issue in this case.  (Bernstein

Aff. ¶ 8).

        3.     <u>The Dozen Or More Potential Witnesses From Massachusetts Outnumber</u>
                <u>Dispoz-o's Witnesses From South Carolina.</u>

As demonstrated above, at least a dozen expected witnesses live in Massachusetts.  By

contrast, Dispoz-o has identified only five potential witnesses from South Carolina.  (Dispoz-o

Mem. p. 12.)  Thus, it is obvious from the standpoint of the number of witnesses that

Massachusetts has far more direct connection to the case than South Carolina.

Moreover, this Court has held that if an employer who is a party to the action can secure

the appearance of employee witnesses regardless of the forum, the factor of out of state witnesses

becomes less important.  *See Kleinerman*, 107 F. Supp. 2d at 125-26 (concluding that, in a patent

infringement case where several of the defendant's key witnesses were its employees, allowing

the defendant's motion to transfer would merely serve to shift the burden of convenience rather

than eliminate it).  In the instant case, because the South Carolina witnesses all appear to be

Dispoz-o employees, the fact that they may be residents of South Carolina should not be afforded

much weight in deciding whether to retain the case in Massachusetts rather than transfer venue.

*See id.*[8]

        4.     <u>There Is No Advantage To South Carolina As Far As Out Of State</u>
                <u>Witnesses Are Concerned.</u>

Dispoz-o has listed approximately ten potential witnesses who reside in neither

Massachusetts nor South Carolina.  With the exception of one German consultant, these

witnesses are scattered throughout the United States, including California, the Midwest, the

Mid-Atlantic, and the Southeast.  A South Carolina venue poses no advantage for most of these

---

[8] By contrast, a number of the Massachusetts witnesses, particularly the BGE witnesses, are not employed by any party and would need to be subpoenaed.

-14-

witnesses.  Indeed, this Court is more accessible to most of them.  Whereas this Court is located

a few minutes from a major national airport, the proposed Court in South Carolina is a 90-minute

drive from the closest large airport in Charlotte, North Carolina.  The witnesses from California,

the Midwest, the Mid-Atlantic states or Europe are likely to find it more convenient to travel to

Boston than to Greenville, South Carolina for trial.

      C.     <u>Much Of The Key Evidence As To The Patents And Trexel Proprietary
Technology Are Located In Massachusetts.</u>

          1.     <u>Because The Patented Inventions Were Made At MIT, Much Of The
Relevant Evidence Is Located In Massachusetts.</u>

The four inventions at issue were conceived by researchers at MIT.  MIT maintains

development files with respect to its patents in Cambridge.  In addition, many of Dr. Suh's files

are in Massachusetts.  Finally, the files of Boston patent prosecution counsel are presumably

maintained in Massachusetts.  Thus, most, if not all, of the documentary evidence about the

patents themselves are in Massachusetts.

          2.     <u>Trexel's Development Documents And The Proprietary Equipment
Believed To Have Been Copied By Dispoz-o Are Located In
Massachusetts.</u>

Trexel has substantial documentation on its facility in Woburn, Massachusetts with

respect to the development of its proprietary Mucell Process and equipment.  (*See* Bernstein Aff.

¶ 6).  In addition, the Plaintiffs allege that Dispoz-o improperly copied or imitated various pieces

of Trexel equipment during the six-month period between the execution of the Settlement

Agreement and the return of the equipment to Trexel.  (Verified Complaint ¶¶ 28, 30; Bernstein

Aff. ¶ 7).  This equipment consists of two primary screws, eight injectors, two hydro-pac pumps

with two hydro-controllers, and inner and outer die lips, most of which is currently stored in

Woburn.  (Bernstein Aff. ¶ 8).

D.    A Jury View Of Trexel's Manufacturing Process Is Unnecessary.

Dispoz-o's argument that the jury should be entitled to view its manufacturing facility in South Carolina is a red herring.  As is common in patent infringement case, the parties can provide video demonstrations of the equipment to the jury.  Utilizing a video is far more efficient and conducive to coordinating witness testimony about the equipment than a site visit.  *See Hirsch v. Zavares*, 920 F. Supp. 148, 151 (D. Colo. 1996) (refusing to transfer venue in a criminal case, stating that: "Photographs or videotape films are preferable substitutes for physical inspection because they can be preserved in the record.").

## IV.    THIS COURT IS THE APPROPRIATE FORUM IN WHICH TO DETERMINE THE APPLICABLE LAW.

A.    This Court Has Substantial Experience With Patent Infringement Litigation.

The Plaintiffs' case involves, first and foremost, alleged patent infringement by Dispoz-o. (Verified Complaint Counts I-IV).  In its counterclaim, Dispoz-o has sought declarations of invalidity and noninfringement of the patents at issue (Counterclaim Counts VIII-IX).  Not only is patent infringement a question of federal law, but also this Court has substantial experience with patent litigation as a result of the pronounced level of both technological research at area universities like MIT and the high technology industry in Eastern Massachusetts.  *See* Table C-3, U.S. District Court, "Civil Cases Commenced, By Nature of Suit and District During the Twelve Month Period Ended March 31, 2004" (indicating that this Court had 242 copyright, patent and trademark cases in the relevant period, nearly five times the number in the District of South Carolina)".

B.    The State Law Claims Are About Evenly Divided Between Massachusetts Claims And South Carolina Claims.

Dispoz-o argues that the case should be transferred to South Carolina because a federal court there would be better able to interpret South Carolina law, which governs Trexel's state

-16-

law counts.  Dispoz-o fails to mention, however, that most of its counterclaims are governed by

Massachusetts law rather than South Carolina law.  Counts III-VII of the counterclaim allege

breach of contract, breach of the duty of good faith and fair dealing, misrepresentation and fraud

in connection with the Dispoz-o Agreement.  (Counterclaim Counts III-VII).[9]  Because the

Dispoz-o Agreement is governed by Massachusetts law (Verified Complaint, Exhibit C, ¶ 9.1),

these four counts of the counterclaim are subject to Massachusetts law.  Thus the number of

Massachusetts's counts in this case is nearly equal to the number of South Carolina counts.[10]

        The fact that South Carolina law may apply to some counts in this case is not sufficient to

overcome the presumption in favor of the plaintiff's chosen forum.  *See Nowak*, 94 F.3d at 720-

21 (concern that a Massachusetts court would be unfamiliar with foreign law was not sufficient

to overcome the presumption in favor of the plaintiff's chosen forum).  This court is certainly

able to decide South Carolina law issues.  *See The Holmes Group,* 249 F. Supp. 2d at 18  (stating

that a federal court in either Virginia or Massachusetts is equally capable of applying appropriate

state law).  Indeed, most of the state law counts pleaded by Trexel and Dispoz-o have analogs in

Massachusetts law—i.e., breach of contract, fraud, unfair trade or business practices, and

misappropriation of trade secrets.  *See Realty Developing Co. v. Wakefield Ready-Mixed*

*Concrete Co*., 327 Mass. 535, 537 (1951) (stating that a breach of contract is "'a failure to

perform for which legal excuse is lacking.'"); *Herring v. Vadala*, 670 F. Supp. 1082, 1086 (D.

Mass. 1987) (explaining the elements a plaintiff must establish to prove fraud); *Mass. Gen. Laws*

ch. 93A, § 2 (2004) (declaring unlawful unfair methods of competition and unfair or deceptive

---

[9]  Only two of Dispoz-o's state law counts – Counts I and II – involve the Settlement Agreement and are therefore
subject to South Carolina law.

[10]  Trexel has at most six counts subject to South Carolina law. However, several of these counts actually involve, in
large part, federal law determinations as to whether Dispoz-o infringed the MIT patents.  *See Kleinerman*, 107 F.
Supp. 2d. at 124.

acts or practices in the conduct of any trade or commerce); *Mass Gen. Laws* ch. 266, § 30 (2004) (making it unlawful to misappropriate the trade secret of another).

## V.    DISPOZ-O'S INTEREST IN AVOIDING COSTS DO NOT JUSTIFY TRANSFER OF VENUE.

Dispoz-o's interest in avoiding the costs of trying the case in Massachusetts are not sufficient to warrant transfer.  This Court has held that travel, employee absence, document production, etc., are merely the common hardships associated with civil litigation, and will not be sufficient to grant a transfer of venue.  *Veryfine Products*, 124 F. Supp. 2d at 26 (denying the defendant's motion to transfer venue in a breach of contract action because of these "common hardships" of civil litigation).  To the extent that the Court considers financial resources as a factor in its decision, Dispoz-o is a much larger company, with 700 employees, and can better afford to litigate in Massachusetts than Trexel, with only 30 employees, can in South Carolina. (Bernstein Aff. ¶ 10); *see Kleinerman*, 107 F. Supp. 2d at 125 (declining to transfer case where the defendant was in better financial position to litigate in forum state than plaintiff to litigate in another jurisdiction).

## VI.    MASSACHUSETTS HAS AN INTEREST IN PROTECTING PATENTS ARISING OUT OF INVENTIONS MADE HERE.

In evaluating the convenience of litigating in a particular court, another factor courts examine is the state or public interest at stake.  *Kleinerman*, 107 F. Supp. 2d at 125. Massachusetts has a strong interest in seeing that its domestic universities and corporations have the opportunity to protect their patent rights and to defend the validity of their patents against potentially infringing manufacturers.  *See Cordell Engineering, Inc. v. Picker International, Inc.*, 540 F. Supp. 1316, 1318, 1320 (D. Mass. 1982) (transferring an action challenging the validity of certain patents from the District of Massachusetts to the Northern District of Ohio, where the patent holder had filed a patent infringement suit).

BOSTON 1946523v5

## **CONCLUSION**

For the above reasons, Dispoz-o's motion to transfer this case to the District of South

Carolina should be denied.

TREXEL, INC. and MASSACHUSETTS
INSTITUTE OF TECHNOLOGY

By their attorneys,


  /s/ Cynthia D. Vreeland
Richard A. Johnston (BBO #253420
Cynthia D. Vreeland (BBO #635143
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel.    (617) 525-6000
Fax     (617) 526-5000

Dated:    July 15, 2004

BOSTON 1946523v5