UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TREXEL, INC. and <br> MASSACHUSETTS INSTITUTE <br> OF TECHNOLOGY, <br> <br> Plaintiffs <br> <br> v. <br> <br> DISPOZ-O PRODUCTS, INC., <br> <br> Defendant | No. 04 CV 10879 JLT |

## AFFIDAVIT OF DAVID P. BERNSTEIN

I David P. Bernstein, having been duly sworn, hereby state as follows:

1. I am president of Plaintiff Trexel, Inc. ("Trexel"). My office is in Woburn, Massachusetts, where Trexel is located. I live in Boston.

2. I previously verified the Complaint in this case. I submit this affidavit in opposition to Defendant Dispoz-o Products, Inc.'s ("Dispoz-o") motion to transfer venue to South Carolina.

3. As alleged in the Verified Complaint, effective September 2000, Trexel and Dispoz-o entered into an Extrusion License Agreement ("Dispoz-o License"), whereby Trexel licensed its proprietary Mucell Process on the basis of an annual license fee payable for each extrusion system that Dispoz-o would install to manufacture product using the MuCell Process. Each such machine was to generate between $300,000 and $390,000 in license fees to Trexel over a seven year period. In addition, Trexel was to sell proprietary equipment to Dispoz-o for approximately $125,000 to $150,000 per extrusion line. I was the principal negotiator for

Trexel. Pursuant to the Dispoz-o License Agreement, Trexel delivered proprietary technology to Dispoz-o's facility in Fountain Head, South Carolina, and Trexel engineers spent weeks assisting Dispoz-o to install Trexel's proprietary equipment and Mucell Process at the facility. As a result of these efforts, Dispoz-o was able to produce plastic school lunch trays at the facility.

4.  In approximately 2001, Trexel and Dispoz-o became involved in a dispute over the Dispoz-o License and in particular over Dispoz-o's contention that the Mucell Process installed at its facility in South Carolina had not been implemented in a timely fashion and did not function as represented. Trexel denied any liability to Dispoz-o, and told Dispoz-o that Dispoz-o was responsible for any delays in installation and functionality problems.

5.  On March 21, 2002, Dispoz-o's counsel sent Trexel's counsel a copy of a complaint which it purportedly had filed in South Carolina against Trexel. On March 25, 2002, Trexel's counsel at Hale and Dorr LLP responded in writing that the Dispoz-o License required mediation in Boston, and the letter demanded mediation. A copy of the letter is attached hereto as Exhibit 1. The parties then mediated the dispute and settled it, without service of the complaint ever having been made.

6.  As alleged in the Verified Complaint, Trexel and Dispoz-o entered into a Settlement Agreement on June 13, 2002. I was the principal negotiator of the Settlement Agreement for Trexel. This Settlement Agreement resolved all of Dispoz-o's claims against Trexel in connection with installation and functionality of the Mucell Process and Trexel equipment, without any admission of liability by Trexel. The Settlement Agreement also required Dispoz-o to cease using all patents rights and Trexel know how and to return proprietary Trexel equipment upon completion of certain payments by Trexel. Dispoz-o kept certain proprietary equipment developed by Trexel for approximately six months after the date of

the Settlement Agreement. The equipment included two primary screws, eight injectors, two hydro-pac pumps with two hydro-controllers and inner and outer die lips. I believe that Dispoz-o kept the equipment inordinately and improperly long in order to copy or imitate Trexel's proprietary technology.

7. Trexel obtained school lunch trays manufactured and sold by Dispoz-o in 2003. I have examined these trays and concluded that they are identical or virtually identical to the trays manufactured by Dispoz-o using the Mucell process prior to the Settlement Agreement and return of Trexel's proprietary equipment. Based on my experience and familiarity with microcellular foam manufacturing processes, and in particular Trexel's, I do not believe that Dispoz-o could have produced these trays without infringing the patents at issue here and without using some or all of Trexel's proprietary process and equipment designs.

8. This case has substantial contacts with Massachusetts. In addition to the factors listed in Paragraph 9 of the Complaint, I note the following:

   a. In addition to myself, the people who developed Trexel as a company and the Trexel technology at issue in this case and are likely to be witnesses in this case are principally residents of Massachusetts. These Massachusetts residents include:

   - Alex D'Arbeloff (a founder and Chairman of the Board of Directors of Trexel, a former Chairman of the MIT Corporation, and the other person besides myself who negotiated with Dispoz-o the Settlement Agreement which is at issue in this case);

   - Nam P. Suh (co-inventor on the four MIT patents at issue, principal developer of the principles of microcellular foaming and a current Trexel director);

   - Jere Anderson (an engineer who has major responsibility for Trexel's equipment designs and process development); and

- Kent Blizard (a former Trexel engineer who had major responsibility for Trexel's process development).

b. Several employees of Battenfeld Gloucester Engineering ("BGE") in Gloucester, Massachusetts are likely to be witnesses because BGE supplied equipment to Dispoz-o for manufacture of plastic trays, obtained designs for Trexel's proprietary equipment and manufactured certain of Trexel's proprietary equipment for Dispoz-o. Upon information and belief, BGE remained at Dispoz-o after the Trexel-Dispoz-o Settlement Agreement of June 13, 2002 obligated Dispoz-o to return Trexel's proprietary equipment. These employees include:

- Vice President of Sales and Marketing Robert Weeks;
- Product Manager Doug Comeau;
- Vice President of Engineering Ken Warnoch; and
- Engineer Ken Sweet.

c. According to Dispoz-o, all of these BGE employees are residents of Massachusetts.

d. All of the documentation as to Trexel's development of the Mucell technology based on the MIT Patents is located in Woburn, Massachusetts. Furthermore, most of the proprietary technology which Dispoz-o returned after allegedly copying or imitating it is located in Woburn.

9. Trexel would prefer to have this case retained in this Court rather than transferred to South Carolina. As stated above, numerous witnesses, many documents and substantial equipment are located in Massachusetts.

10. Trexel has approximately 30 employees, whereas based on information on its website, Dispoz-o has 700 employees. Given these size disparities, it would be more of a

financial hardship for Trexel to try this case in South Carolina than for Dispoz-o to try it in Massachusetts.

11.     Greenville, South Carolina, the city to which Dispoz-o proposes to transfer this case, is not as accessible in general to out of state witnesses as Boston. I and other Trexel employees have had to travel to Greenville many times because Dispoz-o is located in a nearby town. Whereas this Court is only a few minutes ride from Logan International Airport, Greenville is approximately a 90 minute ride from the nearest major airport in Charlotte, North Carolina, and the Charlotte Airport appears to have fewer regular daily flights than Logan from other principal U.S. cities. Alternatively, there is a smaller airport in Greenville, which typically requires expensive connecting flights from large cities.

Sworn under the pains and penalties of perjury

_____
David P. Bernstein